EXHIBIT A

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts |
| --- | --- | --- |
| | | **The Superior Court** |
| | | COUNTY |

| Plaintiff | | Defendant: |
| --- | --- | --- |
| ADDRESS: | 70 Nathan Lane, Plymouth, MA | ADDRESS: 123 S. Front Street, Memphis TN 38103 |
| | | |
| | | 184 Border St East Boston, MA 02128 |
| Plaintiff Attorney: | | Defendant Attorney: |
| ADDRESS: | 71 Commercial Street #234, Boston, MA 02109 | ADDRESS: |
| | | |
| | | |
| BBO: | 641190 | BBO: |

**TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
| --- | --- | --- | --- |
| B22 | Employment Discrimination/Retaliation | F | ☐ YES  ☐ NO |

**\*If "Other" please describe:**

| Is there a claim under G.L. c. 93A? | Is there a class action under Mass. R. Civ. P. 23? |
| --- | --- |
| ☐ YES  ☐ NO | ☐ YES  ☐ NO |

#### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

#### TORT CLAIMS

A. Documented medical expenses to date

    1. Total hospital expenses

    2. Total doctor expenses

    3. Total chiropractic expenses

    4. Total physical therapy expenses

    5. Total other expenses (describe below)

        Subtotal (1-5):     $0.00

B. Documented lost wages and compensation to date     $40,000.00

C. Documented property damages to date

D. Reasonably anticipated future medical and hospital expenses

E. Reasonably anticipated lost wages     $200,000.00

F. Other documented items of damages (describe below)     $250,000.00

Emotional Distress

        TOTAL (A-F):     $490,000.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

#### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
| --- | --- | --- |
| 1. | | |
| | Total | |

| Signature of Attorney/Self-Represented Plaintiff: X  /s/ Christopher M. Waterman | Date: | March 14, 2023 |
| --- | --- | --- |

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

#### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney: X  /s/ Christopher M. Waterman | Date: |
| --- | --- |

# CIVIL ACTION COVER SHEET INSTRUCTIONS —
## SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality †*

AA1 Contract Action involving Commonwealth,
　　Municipality, MBTA, etc. (A)
AB1 Tortious Action involving Commonwealth,
　　Municipality, MBTA, etc. (A)
AC1 Real Property Action involving
　　Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth,
　　Municipality, MBTA, etc. (A)
AE1 Administrative Action involving
　　Commonwealth, Municipality, MBTA,etc. (A)

### CN Contract/Business Cases

A01 Services, Labor, and Materials (F)
A02 Goods Sold and Delivered (F)
A03 Commercial Paper (F)
A04 Employment Contract (F)
A05 Consumer Revolving Credit – M,R,C,P, 8,1 (F)
A06 Insurance Contract (F)
A08 Sale or Lease of Real Estate (F)
A12 Construction Dispute (A)
A14 Interpleader (F)
BA1 Governance, Conduct, Internal
　　Affairs of Entities (A)
BA3 Liability of Shareholders, Directors,
　　Officers, Partners, etc. (A)
BB1 Shareholder Derivative (A)
BB2 Securities Transactions (A)
BC1 Mergers, Consolidations, Sales of
　　Assets, Issuance of Debt, Equity, etc. (A)
BD1 Intellectual Property (A)
BD2 Proprietary Information or Trade
　　Secrets (A)
BG1 Financial Institutions/Funds (A)
BH1 Violation of Antitrust or Trade
　　Regulation Laws (A)
A99 Other Contract/Business Action - Specify (F)

* See Superior Court Standing Order 1-88 for an
explanation of the tracking deadlines for each track
designation: F, A, and X. On this page, the track
designation for each case type is noted in
parentheses.

†* Choose this case type if ANY party is the
Commonwealth, a municipality, the MBTA, or any
other governmental entity UNLESS your case is a
case type listed under Administrative Civil Actions
(AA).

‡ Choose this case type if ANY party is an
incarcerated party, UNLESS your case is a case
type listed under Administrative Civil Actions (AA)
or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

D01 Specific Performance of a Contract (A)
D02 Reach and Apply (F)
D03 Injunction (F)
D04 Reform/ Cancel Instrument (F)
D05 Equitable Replevin (F)
D06 Contribution or Indemnification (F)
D07 Imposition of a Trust (A)
D08 Minority Shareholder's Suit (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting (A)
D11 Enforcement of Restrictive Covenant (F)
D12 Dissolution of a Partnership (F)
D13 Declaratory Judgment, G.L. c. 231A (A)
D14 Dissolution of a Corporation (F)
D99 Other Equity Action (F)

### PA Civil Actions Involving Incarcerated Party ‡

PA1 Contract Action involving an
　　Incarcerated Party (A)
PB1 Tortious Action involving an
　　Incarcerated Party (A)
PC1 Real Property Action involving an
　　Incarcerated Party (F)
PD1 Equity Action involving an
　　Incarcerated Party (F)
PE1 Administrative Action involving an
　　Incarcerated Party (F)

### TR Torts

B03 Motor Vehicle Negligence - Personal
　　Injury/Property Damage (F)
B04 Other Negligence - Personal
　　Injury/Property Damage (F)
B05 Products Liability (A)
B06 Malpractice - Medical (A)
B07 Malpractice - Other (A)
B08 Wrongful Death - Non-medical (A)
B15 Defamation (A)
B19 Asbestos (A)
B20 Personal Injury - Slip & Fall (F)
B21 Environmental (F)
B22 Employment Discrimination (F)
BE1 Fraud, Business Torts, etc. (A)
B99 Other Tortious Action (F)

### RP Summary Process (Real Property)

S01 Summary Process - Residential (X)
S02 Summary Process - Commercial/
　　Non-residential (F)

### RP Real Property

C01 Land Taking (F)
C02 Zoning Appeal, G.L. c. 40A (F)
C03 Dispute Concerning Title (F)
C04 Foreclosure of a Mortgage (X)
C05 Condominium Lien & Charges (X)
C99 Other Real Property Action (F)

### MC Miscellaneous Civil Actions

E18 Foreign Discovery Proceeding (X)
E97 Prisoner Habeas Corpus (X)
E22 Lottery Assignment, G.L. c. 10, § 28 (X)

### AB Abuse/Harassment Prevention

E15 Abuse Prevention Petition, G.L. c. 209A (X)
E21 Protection from Harassment, G.L. c. 258E(X)

### AA Administrative Civil Actions

E02 Appeal from Administrative Agency,
　　G.L. c. 30A (X)
E03 Certiorari Action, G.L. c. 249, § 4 (X)
E05 Confirmation of Arbitration Awards (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9 (A)
E07 Mass Antitrust Act, G.L. c. 93, § 8 (X)
E08 Appointment of a Receiver (X)
E09 Construction Surety Bond, G.L. c. 149,
　　§§ 29, 29A (A)
E10 Summary Process Appeal (X)
E11 Worker's Compensation (X)
E16 Auto Surcharge Appeal (X)
E17 Civil Rights Act, G.L. c.12, § 11H (A)
E24 Appeal from District Court
　　Commitment, G.L. c.123, § 9(b) (X)
E94 Forfeiture, G.L. c. 265, § 56 (X)
E95 Forfeiture, G.L. c. 94C, § 47 (X)
E99 Other Administrative Action (X)
Z01 Medical Malpractice - Tribunal only,
　　G.L. c. 231, § 60B (F)
Z02 Appeal Bond Denial (X)

### SO Sex Offender Review

E12 SDP Commitment, G.L. c. 123A, § 12 (X)
E14 SDP Petition, G.L. c. 123A, § 9(b) (X)

### RC Restricted Civil Actions

E19 Sex Offender Registry, G.L. c. 6, § 178M (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S(X)

## TRANSFER YOUR SELECTION TO THE FACE SHEET

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** — On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall
state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the
statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as
otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT** — If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may
file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND
## ACCURATELY, THE CASE MAY BE DISMISSED.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT
                                               DEPARTMENT OF THE
                                               TRIAL COURT

_____
                               )
MICHAEL "MICKEY" PERSICHINI,    )              Case No.
                               )
                Plaintiff,      )
                               )
v.                              )
                               )
AUTOZONERS, LLC, dba            )
AUTOZONE                        )
                Defendant       )
_____)

## COMPLAINT & JURY DEMAND

Plaintiff Michael "Mickey" Persichini hereby complains against Defendant AutoZoners, LLC dba AutoZone as follows:

## PRELIMINARY STATEMENT

This matter arises from the abhorrent treatment, harassment and retaliation of, and against, a long-time employee of auto parts giant AutoZone. In recent years Mr. Persichini, a 64-year-old star employee, has been subjected to bullying tactics of his superiors, called a "dinosaur" and other ageist and disparaging comments. When he complained about the treatment, he was demoted and humiliated. Plaintiff brings these claims seeking recovery for such unlawful and inhumane treatment.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to G.L. c. 212, §3 and G.L. c. 214 § 1C.

2.      Venue is proper in this Court pursuant to G.L. c. 223, § 1 and G.L. c. 214, §5.

3.     On or about November 21, 2022, Plaintiff filed a Complaint against Defendant

with the Massachusetts Commission Against Discrimination ("MCAD" or "the Commission")

under docket number 22NEM03181. 90 days since filing of the Complaint has passed and thus

pursuant to 804 CMR 1.04(12) and G.L. c. 151B, §9, Plaintiff hereby files his complaint with

this Court.

**PARTIES**

4.     Michael "Mickey" Persichini (hereinafter "Mr. Persichini" or "Plaintiff"), is an

individual residing at 70 Nathan Lane, Plymouth, MA 02360.

5.     Defendant AutoZoners, LLC, dba AutoZone, (hereinafter "Defendant" or

"AutoZone"), is a limited liability company organized under the laws of Nevada, with its

headquarters located at 123 S. Front Street, Memphis, TN, 38103.

6.     AutoZone is registered to do business in Massachusetts, and at all times relevant,

employs over 20 employees in Massachusetts.

7.     AutoZone is one of the largest auto parts stores in the United States and has over

100 retail stores in Massachusetts, including a store located in East Boston, Suffolk County.

8.     AutoZone's registered agent is CT Corporation System with an address of 155

Federal Street, Suite 700, Boston, MA 02110.

**FACTS**

9.     Mr. Persichini commenced his employment with AutoZone on or around March

3, 1991.

10.     He started his employment at AutoZone (ADAP at the time) as a store manager in

the Stoughton shop.

11.     Mr. Persichini currently remains employed at AutoZone as manager of the Mansfield, Massachusetts location, store #3659.

12.     Over his 31-year tenure at AutoZone, his performance and customer service were stellar and often the subject of commendations and praise, including the following awards and commendations: following awards: Leadership Award, the Doc Crane Award, the JR Hyde, Sr. Award, and Sales Leadership Counsel Award.

13.     More directly, this performance resulted in a series of promotions, the last of which was as District Manager of the New England Region in January 2005, a position he held until his first wrongful demotion in May 2021.

14.     His next unlawful, discriminatory and retaliatory demotion occurred on December 14, 2021,[1] when he was involuntarily removed as store manager of the Mega Hub and became store manager of the Mansfield, Massachusetts location, store #3659.

15.     Before these demotions, in February 2021, AutoZone's regional manager, Mark McGuire called Mr. Persichini advising him that was placing Mr. Persichini on a performance improvement plan ("PIP").

16.     Mr. Persichini had no advance notice or indication that his performance was considered unacceptable, which is supported by this most recent performance evaluation.

17.     Mr. McGuire claimed the PIP was necessary because performance was down in the three stores Mr. Persichini managed.

18.     Of particular significance, Mr. Persichini had only recently acquired these stores, and any performance issues pre-dated his tenure as their manager. When Mr. Persichini inquired

---

[1] On September 7, 2022, Plaintiff and Defendant entered into a tolling agreement which extended the 300 day statute of limitations from October 9, 2022, to December 7, 2022, thus this Complaint is timely filed.

about the reasoning behind the PIP, Mr. McGuire dismissed his inquiry and simply replied "not

to worry about it."

19.     Two weeks later, Mr. McGuire met Mr. Persichini at the mega hub store

accompanied by another store manager who was training to be a district manager (the

"Trainee").

20.     The Trainee asked Mr. Persichini how much longer he intended to work with

AutoZone and Mr. McGuire chimed in stating that Mr. Persichini was "**older than dinosaurs.**"

(Mr. Persichini had been the target of such ageist and inappropriate comments since at least

2019).

21.     When Mr. Persichini clarified that he expected to work as a district manager for at

least another three (3) years, Mr. McGuire quickly responded, "sooner than that."

22.     In March 2021, Mr. McGuire spoke to Mr. Persichini about his position as district

manager.

23.     Again, Mr. McGuire inquired about how long Mr. Persichini planned to continue

to work as a district manager at AutoZone. Mr. Persichini responded, "until the end of Fiscal

Year 2024."

24.     Mr. McGuire proceeded to ask Mr. Persichini to agree to step down as district

manager and put such an agreement in writing.  Mr. Persichini declined.

25.     In March of 2021, Mr. Persichini reported the ageist comments to AutoZone's

Executive Vice President, Preston Frazer.

26.     One week later Mr. Frazer called Mr. Persichini and the two discussed Mr.

Persichini's complaint about Mr. McGuire's ageist comments directed at Mr. Persichini,

4

including, but not limited to, calling him "a dinosaur," "a caveman," "getting up in years," and asking if Mr. Persichini "remembers The Flintstones," etc.

27.     Mr. Persichini was hopeful that after reporting these comments to Mr. Frazer, the continuous harassment and age discrimination jokes would stop—however, they did not.

28.     Shortly thereafter, in April 2021, Mr. McGuire called Mr. Persichini and instructed him to report to the regional office in Manchester, New Hampshire on April 5, 2021.

29.     He wanted to discuss the ongoing PIP.

30.     Mr. McGuire stated knew that Mr. Persichini had lodged complaints about him to Mr. Frazer. Mr. Persichini asked Mr. McGuire "Where is this PIP going?"

31.     Mr. McGuire, ignoring the question, gave Mr. Persichini an ultimatum: step down as district manager or the PIP would remain in his employee file permanently. Mr. Persichini refused this demand.

32.     Mr. McGuire then advised Mr. Persichini that he was going to be removed as district manager on May 8, 2021. He was then moved (demoted) to the Framingham Mega Hub.

33.     This demotion resulted in a loss of compensation.

34.     While he was manager of the Mega Hub Mr. Persichini constantly asked Mr. McGuire for support to fix the problems at the store.

35.     Mr. McGuire responded with zero support or assistance, despite providing significant assistance to the other stores.

36.     In July 2021, Mr. Persichini sent an email to Mr. McGuire entitled "Action Plan 5069 - Urgent."

37.     In this email Mr. Persichini listed six comprehensive areas in which he needed immediate assistance to fix the issues at store 5069.

5

38.     Mr. McGuire then responded to Mr. Persichini telling him to have Garrett Souza, another district manager, look into it. Mr. Souza had no information and provided no assistance.

39.     In September, Mr. McGuire visited Mr. Persichini with Mr. Souza. For eight (8) hours, Mr. McGuire harassed Mr. Persichini about everything that was wrong with the Mega Hub store, blaming him for issues that dated back to August 2018, long before Mr. Persichini had ever stepped foot in the mega hub store.

40.     In October 2021, Mr. Souza gave Mr. Persichini a Rewards Performance Management Review "RPM" for Fiscal Year 2021.

41.     This evaluation was a "meets," i.e., satisfactory performance.

42.     Immediately following this evaluation, however, Mr. Persichini was required to sign a document that was originally written in September 2021 regarding a serious violation for numerous issues that had been ongoing from 2018.

43.     Conspicuously, Mr. Persichini was not in charge of the Mega Hub in 2018.

44.     By the end of October, there were several notes in Mr. Persichini's file, including one about commercial and another about overtime.

45.     On or around November 9, 2021, Mr. Persichini reported the harassment, age discrimination, and hostile work environment that Mr. Persichini was enduring to Rick Smith, AutoZone's human resources vice president.

46.     He discussed the details of the harassment and comments with Mr. Smith's office the following day.

47.     On November 10, 2021, after years of suffering incessant abuse, harassment and discrimination, Mr. Persichini went to see his primary care provider, Dr. Edward Nilband.

6

48.     Based on his emotional state and condition, Dr. Nilband advised Mr. Persichini to take thirty (30) days of medical leave from work. Mr. Persichini made the regional manager, district manager, and human resources aware of the situation and sent them a copy of a note from Dr. Nilband.

49.     Mr. Persichini's medical leave was approved.

50.     Upon Mr. Persichini's return from medical leave on December 13, 2021, Mr. Souza contacted Mr. Persichini to update him about the plan for that week.

51.     He advised Mr. Persichini that Mr. McGuire would be shadowing him that week. Mr. Persichini met with Mr. McGuire and Mr. Souza on December 14, 2021.

52.     Mr. McGuire stated that he was "very concerned about [Mr. Persichini's] health, very concerned. [He is] getting up in years and he can't have [Mr. Persichini] dropping dead on the floor".

53.     Mr. Persichini, shocked by the comment, replied that he felt fine.

54.     Mr. McGuire then informed Mr. Persichini that he was being demoted, and effective immediately would be removed from the Mega Hub to run a satellite store in Mansfield, Massachusetts, where he continues to work to this day.

55.     Mr. Persichini requested that they allow him to remain in his current position until May 12, 2022, for the inventory.

56.     Mr. McGuire rejected this request.

57.     Mr. Persichini asked if he could stay until the end of the year and work with the new manager.

58.     Mr. McGuire again declined this request.

59.     Mr. Persichini asked if he could work until the end of the week.

7

60.    Mr. McGuire said no.

61.    Mr. Persichini asked if he could finish the day out.

62.    Again, Mr. McGuire declined this request.

63.    Mr. McGuire has since been terminated by AutoZone.

**Latest Discriminatory and Retaliatory Act**

64.    The retaliation and discrimination against Mr. Persichini continued through December 2022 and into January 2023.

65.    On December 15, 2022, AutoZone's new Regional Manager visited Mr. Persichini's Mansfield store.

66.    He asked the District Manager if Mr. Persichini would accept a transfer to AutoZone's Plymouth store.

67.    Mr. Persichini was not interested in the transfer and did not understand the motivation or reason for the request.

68.    Upon information and belief, Mr. Persichini was the only store manager who was requested to accept a transfer.

69.    On January 17, 2023, the Regional Manager asked Mr. Persichini again to transfer out of the Mansfield store.  This time he asked him to go to the Kingston store.

70.    While Mr. Persichini was not interested in a transfer, he reluctantly accepted the transfer.

71.    He feared if he did not accept the transfer, he would suffer further adverse employment actions and negative repercussions.

72.    Mr. Persichini felt targeted, which continued the pattern of his treatment by AutoZone for the past few years (since he had turned 60).

73.     As a result of being forced to accept the transfer, Mr. Persichini went from a new store (Mansfield) which had correct planograms, was well-maintained, and was a showcase store, to the Kingston location which was in complete disarray.

74.     The inventory was incorrect and the paperwork was incomplete.

75.     Mr. Persichini basically walked into a hornet's nest.

76.     Once again he was left to clean up the mess from the prior manager.

77.     Mr. Persichini went from a high performing store in Mansfield to Kingston, an underperforming and disorganized store. The transfer to Kingston was an adverse employment action and further discrimination and retaliation against Mr. Persichini.

## COUNT I
### Hostile Work Environment and Harassment based on Mr. Persichini's Age

78.     Plaintiff repeats and realleges the allegations in the preceding paragraphs as if the same were set forth more fully herein.

79.     Under the ADEA and M.G.l. c. 151B, an employee claiming to have been the victim of such a hostile work environment must show that his workplace was "'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" Trent v. ADT Sec. Servs., Inc., No. 11-cv-11912-RGS, 2013 U.S. Dist. LEXIS 119356, 2013 WL 4512052, at *6 (D. Mass. Aug. 22, 2013) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)); see also Prescott v. Higgins, 538 F.3d 32, 42 (1st Cir. 2008)

80.    Here, Mr. Persichini was subjected to ageist comments and insults on numerous occasions.

81.    Mr. McGuire called Mr. Persichini "a dinosaur," "a caveman," telling him that he is "getting up in years," and asking if Mr. Persichini "remembers The Flintstones," etc.

82.    When Mr. Persichini returned from medical leave as a result of the stress of the workplace at AutoZone, Mr. McGuire stated that "he [Mr. Persichini] was getting up in years and he could not have him dropping dead on the floor," again referring to his age.

83.    Not only was Mr. Persichini harassed directly and personally by Mr. McGuire, , he was also humiliated in front of his co-workers and colleagues.

84.    In February 2021, a Trainee asked Mr. Persichini how much longer he intended to work with AutoZone and Mr. McGuire chimed in stating that Mr. Persichini was "older than dinosaurs."

85.    This is only one example of the numerous times that another staff member with AutoZone has publicly humiliated and harassed Mr. Persichini.

86.    These comments have undisputedly caused a hostile work environment, both between Mr. Persichini and Mr. McGuire but also diminished the respect that Mr. Persichini receives from his staff and colleagues and further perpetuates the stigma related to Mr. Persichini's age.

87.    Such conduct of AutoZone was unwelcome by Plaintiff.

88.    Such conduct of AutoZone created an intimidating, hostile, humiliating, and/or sexually offensive work environment.

89.    Such conduct of AutoZone unreasonably interfered with Plaintiff's work performance and/or otherwise altered his employment with AutoZone.

10

90.     As a direct and proximate result of AutoZone's hostile work environment, discrimination and wrongful demotions, Plaintiff has sustained damages in an amount to be determined at trial, including, but not limited to loss of future earnings, emotional distress damages, punitive damages, plus interest, costs, and attorneys' fees.

## <u>COUNT II</u>
### Retaliation / Violation of M.G.L. c. 151B § 4

91.     Plaintiff repeats and realleges the allegations in the preceding paragraphs as if the same were set forth more fully herein.

92.     Both the ADEA and Chapter 151B explicitly prohibit employers from taking adverse action against an employee who has "opposed any practice" that is prohibited under those statutes. 29 U.S.C. § 623(d); Mass. Gen. Laws c. 151B, § 4(4).

93.     AutoZone has repeatedly and explicitly retaliated against Mr. Persichini.

94.     In fact, Mr. McGuire stated that he "knew Mr. Persichini had spoken to Mr. Frazer" and within the same conversation, Mr. McGuire gave Mr. Persichini an ultimatum to either step down from his position as district manager or the unwarranted PIP would remain in his employee file.

95.     When Mr. Persichini refused to step down, Mr. McGuire let Mr. Persichini know that he was demoting Mr. Persichini and his last day as a district manager would be May 8, 2021.

96.     This action by Mr. McGuire on behalf of AutoZone demonstrates a clear causal connection between Mr. Persichini's report to Mr. Frazer and his demotion.

97.     In November 2021, Mr. Persichini complained to Human Resources about the harassment at the hands of Mr. McGuire.

11

98.  This complaint was never investigated.

99.  One month later, upon his return from leave, Mr. Persichini was demoted yet again.

100.  The retaliation continued through January 17, 2023, when Mr. Persichini was involuntarily transferred to the Kingston store.

101.  As a direct and proximate result of AutoZone's retaliation, Plaintiff has sustained damages in an amount to be determined at trial, including, but not limited to loss of future earnings, emotional distress damages, punitive damages, plus interest, costs, and attorneys' fees.

## COUNT III
### FMLA Retaliation

102.  Plaintiff realleges and incorporates by reference the facts set forth in all of the preceding paragraphs.

103.  This action is brought pursuant to the Family Medical Leave Act, 29 U.S.C. Chapter 28 ("FMLA").

104.  Plaintiff requested and submitted paperwork for FMLA leave.

105.  Plaintiff was never offered the opportunity to take FMLA protected leave.

106.  Instead, he was forced to use his accrued sick and vacation time to cover his leave period.

107.  Defendant engaged in retaliation against Plaintiff when it demoted Plaintiff upon his return from leave.

108.  As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination and harassment against him, Plaintiff has suffered and will continue to suffer

emotional distress, a loss of earnings and other employment benefits and job opportunities. The Plaintiff is thereby entitled to compensatory damages in amounts to be proven at trial.

109.  As a further, direct, and proximate result of Defendant's violation of the FMLA as heretofore described, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of his employment relationship with Defendant, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to her. Plaintiff requests that attorneys' fees and costs be awarded pursuant to the FMLA.

## COUNT IV
### Age Discrimination

110.  Plaintiff realleges and incorporates by reference the facts set forth in all of the preceding paragraphs.

111.  AutoZone is subject to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 and Massachusetts Fair Employment Practices Act (codified under M.G.L. c. 151B) ("Chapter 151B"), both of which prohibits age discrimination against employees who are age forty (40) and older, such as Mr. Persichini.

112.  In Massachusetts, it is an unlawful practice "[f]or an employer in the private sector…because of the age of any individual…to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment, unless based upon a bona fide occupational qualification." M.G.L. c. 151B § 4(1B).

13

113.  Mr. Persichini is currently 64 years old, and thus protected by the ADEA and Chapter 151B.

114.  Mr. Persichini has obtained satisfactory reviews throughout his thirty-one (31) years with AutoZone.

115.  Recently, in or around October 2021, Mr. Souza gave Mr. Persichini a satisfactory rating for fiscal year 2021.

116.  Despite Mr. Persichini's satisfactory employment evaluations, he was demoted twice within a span of six (6) months—once before the evaluation and again after.

117.  These demotions came at or around the time of ageist comments by his supervisors, Mr. Persichini was demoted without justification.

118.  AutoZone has replaced Mr. Persichini's previous position with another individual and thus, the position undeniably remains necessary.

119.  AutoZone further discriminated against Mr. Persichini when it involuntarily transferred him to the Kingston store.

120.  As a direct and proximate result of AutoZone's age discrimination, Plaintiff has sustained damages in an amount to be determined at trial, including, but not limited to loss of future earnings, emotional distress damages, punitive damages, plus interest, costs, and attorneys' fees.

**COUNT V**
**Violation of Paid Family Medical Leave Act, c. 175M Sec. 2(h)(1)**

121.  Plaintiff realleges and incorporates by reference the facts set forth in all of the preceding paragraphs.

14

122.  PFML provides Massachusetts' employees with up to twelve (12) weeks of job-protected, paid family leave, up to twenty (20) weeks of job-protected, paid medical leave, or up twenty-six (26) weeks of combined family and medical leave in a benefit year.

123.  Under the PFML, specifically M.G.l. c. 175M, §2(h)(1), an employer may not compel an employee to exhaust rights to any sick, vacation or personal time prior to, or while, taking PFML leave.

124.  In November 2021, Mr. Persichini provided the regional manager, district manager, and human resources with a doctor's note from Dr. Nilband, who recommended he take thirty (30) days of leave to help recover from the harassment and hostile work environment.

125.  AutoZone never informed Mr. Persichini of his PFML rights,

126.  This notice alone qualified Mr. Persichini for PFML, job-protected leave.

127.  During his leave of absence in November 2021-December 2021, AutoZone required Mr. Persichini to use his vacation and sick time for payment, rather than benefits afforded to him under the PFML.

128.  They never provided him with the option to utilize his PFML benefits.

129.  Upon his return from medical leave of absence, AutoZone demoted Mr. Persichini once again.

130.  As a direct and proximate result of AutoZone's violation of Mr. Persichini's PFML rights against retaliation and leave rights, Mr. Persichini has sustained damages in an amount to be determined at trial, including, but not limited to loss of future earnings, emotional distress damages, punitive damages, statutory damages, plus interest, costs, and attorneys' fees.

## DEMAND FOR JURY TRIAL

Plaintiff hereby makes a demand for trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff hereby respectfully requests that this Court:

a.    Declare Defendant created an intimidating, hostile, humiliating, discriminatory and/or offensive work environment in violation of M.G.L. c. 151B § 4;

b.    Declare Defendant engaged in workplace discrimination and retaliation in violation of M.G.L. c. 151B § 4;

c.    Enjoin Defendant, its agents, officers, employees and volunteers from engaging in practices this Court deems to be in violation of M.G.L. c. 151B § 4;

d.    Order Defendant's agents, officers, employees, and volunteers undergo harassment and discrimination training;

e.    Order Defendant to adopt and implement harassment and discrimination policies;

f.    Declare that Defendant's conduct alleged herein resulted in the retaliatory demotion of the Plaintiff;

g.    Award Plaintiff his damages, pursuant to G.L. c. 151B § 5, in an amount to be determined at trial, including back pay, front pay, loss of benefits, loss of future earnings, punitive damages, interest, his costs, and attorneys' fees;

    h.      Grant any other or further relief as the Court deems just and proper.

Dated this 14th day of March 2023.

Respectfully submitted,

MICHAEL "MICKEY" PERSICHINI

By his attorney,

_s/Christopher Waterman_
Christopher Waterman BBO# 641190
cwaterman@watermanemploymentlaw.com
WATERMAN EMPLOYMENT LAW
GROUP, LLC
71 Commercial Street, #234
Boston, MA 02109
Telephone: (617) 665-8828
Fax: (617) 850-9001

*Counselor for the Plaintiff*

17

18